## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| TALLGRASS ENERGY, LP, WILLIAM R. | : **SECURITIES EXCHANGE ACT OF** |
| MOLER, MARCELINO OREJA ARBURÚA, | : **1934** |
| GUY G. BUCKLEY, ROY N. COOK, | : |
| THOMAS A. GERKE, WALLACE C. | : **JURY TRIAL DEMANDED** |
| HENDERSON, MATTHEW J.K. RUNKLE, | : |
| and TERRANCE D. TOWNER, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Tallgrass Energy, LP ("Tallgrass or the "Company") and the members Tallgrass' board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition by affiliates of Blackstone Infrastructure Partners ("Blackstone"), Engás, GIC, NPS, and USS.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 21, 2020 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Prairie Private Acquiror LP will merge with and into Tallgrass, with Tallgrass surviving the merger and continuing to exist as a Delaware limited partnership (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Tallgrass common stock issued and outstanding will be converted into the right to receive $22.45 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Tallgrass stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts, which was utilized by the financial advisor of the Company, Evercore Group LLC ("Evercore"), in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tallgrass stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Tallgrass is a Delaware limited partnership formed in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Tallgrass common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant William R. Moler has served as the Chief Executive Officer of the general partner of Tallgrass, Tallgrass Energy GP, LLC (the "General Partner"), since November 2019 and has been a director of the General Partner since February 2015.

11. Individual Defendant Marcelino Oreja Arburúa has served as a director of the General Partner since March 2019.

12. Individual Defendant Guy G. Buckley has served as a director of the General Partner since March 2019.

13. Individual Defendant Roy N. Cook has served as a director of the General Partner since September 2018.

14. Individual Defendant Thomas A. Gerke has served as a director of the General Partner since August 2015.

15. Individual Defendant Wallace C. Henderson has served as a director of the General Partner since March 2019.

16. Individual Defendant Matthew J.K. Runkle has served as a director of the General Partner since March 2019.

17. Individual Defendant Terrance D. Towner has served as a director of the General Partner since September 2018.

18. Defendant Tallgrass is a Delaware limited partnership and a public traded Delaware master limited partnership with its principal executive offices located at 4200 W. 115th Street, Suite 350, Leawood, Kansas 66211. The Company's common stock trades on the New York Stock Exchange under the symbol "TGE."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

21. Tallgrass, through its subsidiaries, provides crude oil transportation services to customers in Wyoming, Colorado, Kansas, and the surrounding regions of the United States. The Company operates through three segments: Natural Gas Transportation; Crude Oil Transportation; and Gathering, Processing & Terminalling. It also provides natural gas transportation and storage services for customers in the Rocky Mountain, Midwest, and Appalachian regions; natural gas and crude oil gathering and processing services for customers in Wyoming; and natural gas liquids

(NGLs) transportation services in Northeast Colorado and Wyoming. In addition, the Company offers water business services, including freshwater transportation, and produced water gathering and disposal in Colorado, Texas, Wyoming, and North Dakota; crude oil storage and terminalling services in Colorado, Oklahoma, and Kansas; and marketing services for NGLs and crude oil. The Company was formerly known as Tallgrass Energy GP, LP and changed its name to Tallgrass Energy, LP in June 2018. Tallgrass was founded in 2012 and is based in Leawood, Kansas.

22. On December 17, 2019, Tallgrass announced the Proposed Transaction:

> LEAWOOD, Kan.--(BUSINESS WIRE)--Tallgrass Energy, LP (NYSE: TGE) today announced that it has entered into a definitive merger agreement pursuant to which affiliates of Blackstone Infrastructure Partners together with affiliates of Enagas, GIC, NPS and USS (collectively with Blackstone Infrastructure Partners, the "Sponsors") will acquire all of the publicly-held outstanding Class A Shares of TGE for $22.45 in cash per Class A Share.
>
> The transaction is expected to close in the second quarter of 2020, subject to the satisfaction of customary conditions, including approval of the merger by holders of a majority of the outstanding Class A and Class B Shares of TGE, voting together as a single class, inclusive of the approximately 44 percent of the total Class A and Class B Shares held by the Sponsors. Upon closing of the transaction, the Class A Shares will cease to be publicly traded. Pursuant to the merger agreement, TGE has agreed not to pay distributions during the pendency of the transactions contemplated by the merger agreement.
>
> The Conflicts Committee of the Board of Directors of Tallgrass Energy GP, LLC, TGE's General Partner ("TGE GP"), after consultation with its independent legal and financial advisors, unanimously approved the transaction and determined it to be in the best interests of TGE and its public shareholders.
> The Sponsors expect to fund the purchase of the Class A Shares with approximately $3 billion of equity, with the remainder of the funding necessary to consummate the transaction provided by debt.
>
> Citigroup Global Markets Inc. and Credit Suisse Securities (USA) LLC served as financial advisors and Vinson & Elkins L.L.P. acted as legal advisor to Blackstone Infrastructure Partners. Latham &

>Watkins LLP acted as legal advisor to Enagas. Sidley Austin LLP acted as legal advisor to GIC.
>
>Evercore Group LLC served as the financial advisor and Bracewell LLP acted as legal advisor to the Conflicts Committee of the Board of Directors of TGE's General Partner.
>
>Baker Botts L.L.P. acted as legal advisor to TGE.

* * *

23.     The Board is recommending to the Company's shareholders to vote in favor of the Proposed Transaction. It is therefore imperative that Tallgrass' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

24.     On January 21, 2020, Tallgrass filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Tallgrass Financial Projections*

25.     The Proxy Statement fails to provide material information concerning financial projections prepared by Tallgrass management and relied upon by Evercore in its analysis. The

Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Tallgrass management provided to the Board and the financial advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26.     For the Management Case and the Historical Growth Capital Expenditure Case, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2023: Adjusted EBITDA and Cash Available for Dividends, but fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 39-40.

27.     When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

29. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

30. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analyses that were prepared by Evercore and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

34. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

9

35. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

36. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Tallgrass within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Tallgrass, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Tallgrass, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tallgrass, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: February 5, 2020 | **RIGRODSKY & LONG, P.A.** |
| | By: */s/ Gina M. Serra* |
| **OF COUNSEL:** | Brian D. Long (#4347) |
| | Gina M. Serra (#5387) |
| **WOLF HALDENSTEIN ADLER** | 300 Delaware Avenue, Suite 1220 |
| **FREEMAN & HERZ LLP** | Wilmington, DE 19801 |
| Gloria Kui Melwani | Telephone: (302) 295-5310 |
| 270 Madison Avenue | Facsimile: (302) 654-7530 |
| New York, NY 10016 | Email: bdl@rl-legal.com |
| Telephone: (212) 545-4600 | Email: gms@rl-legal.com |
| Facsimile: (212) 686-0114 | |
| Email: melwani@whafh.com | *Attorneys for Plaintiff* |